**O, JS-6**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

BAHRAM JARRAHI,

Plaintiff,

v.

FOREMOST INSURANCE COMPANY GRAND RAPIDS, MICHIGAN,

Defendant.

Case No.: 2:20-cv-03240-MEMF(AGRx)

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 48]**

Before the Court is the Motion for Summary Judgment filed by Defendant Foremost Insurance Company, Grand Rapids, Michigan. ECF No. 48. For the reasons set forth below, the Court GRANTS Foremost's Motion for Summary Judgment.

/ / /

/ / /

## I. Background[1]

### A. Factual Background

Plaintiff Jarrahi ("Jarrahi") owns a mobile home located in Calabasas, California. 3AC ¶ 1. He obtained mobile home insurance coverage from Defendant Foremost Insurance Company, Grand Rapids, Michigan ("Foremost"), which was in effect from August 4, 2016, to August 4, 2017 (the "Policy"). *Id.* ¶ 8. On February 17, 2017, two trees fell on Jarrahi's property during a rainstorm, after which rainwater entered the mobile home. *Id*. ¶ 9. Jarrahi reported the damage to Foremost the following day. *Id*. ¶ 10. The issues presented in this case are whether the policy benefits that Foremost paid to Jarrahi were sufficient to cover the damages caused by the falling trees on his property and whether the policy benefit payment was consistent with the insurance coverage that Jarrahi obtained.

### B. Procedural History

On March 9, 2020, Jarrahi filed this action in the Superior Court of Los Angeles County, seeking damages, injunctive relief, and reformation of the insurance contract. ECF. No. 1-1. On April 7, 2020, Foremost removed the action to federal court. ECF. No. 1. On August 9, 2021, Jarrahi filed a Third Amended Complaint advancing the following causes of action: (1) Breach of Contract; (2) Breach of Implied Covenant of Good Faith and Fair Dealing; and (3) Violation of California's Unfair Competition Law, CAL. BUS. & PROF. CODE § 17200, *et seq*. ("UCL"). *See generally* 3AC. Foremost filed an Answer to the Third Amended Complaint on August 23, 2021. ECF. No. 45. Foremost filed the instant Motion for Summary Judgment on November 15, 2021. ECF. No. 48 ("Motion" or "MSJ"). On February 10, 2022, by an Order of the Chief Judge, this case was reassigned to this Court. ECF. No. 58. The matter was fully briefed on February 11, 2022. ECF. Nos. 57 ("Opp'n"), 59 ("Reply"). On February 11, 2022, Foremost filed Objections to Jarrahi's

[1] Unless otherwise indicated, the factual allegations listed below come from the Third Amended Complaint, ECF No. 44 ("Third Amended Complaint" or "3AC") and Defendant's Statement of Uncontroverted Facts, ECF No. 48-1 ("Foremost SUF").

Opposition. ECF No. 60 ("Foremost Objections").[2] Oral argument was held on July 14, 2022. ECF. No. 63. Following the hearing, the Court took this matter under submission. ECF No. 68.

**II. <u>Applicable Law</u>**

Summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Material facts are those that may affect the outcome of the case. *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248.

Under Rule 56(a), a court also has authority to grant *partial* summary judgment, or "judgment on less than the entire case." 10B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2737 (4th ed. 2022) (citing FED. R. CIV. P. 56(a)). Under Rule 56(g), a court that "does not grant all the relief requested by the motion . . . may enter an order stating any material fact . . . that is not genuinely in dispute and treating the fact as established in the case." FED. R. CIV. P. 56(g).

A court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992). "A moving party without the ultimate burden of persuasion at trial—usually, but not always, a defendant—has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). To carry its burden of production, the moving party must either: (1) produce evidence negating an essential element of the nonmoving party's claim or defense; or (2) show that there is an absence of evidence to support the nonmoving party's case. *Id.*

Where a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden

[2] The Court has reviewed Foremost's Objections and rules as follows: Objections No. 1, 5–7, and 10–13 are sustained. Objection No. 2–4 and 8–9 are overruled.

of persuasion at trial. *Id.* at 1102–03. In such cases, the nonmoving party may defeat the motion for summary judgment without producing anything. *Id.* at 1103. However, if a moving party carries its burden of production, the burden shifts to the nonmoving party to produce evidence showing a genuine dispute of material fact for trial. *Liberty Lobby*, 477 U.S. at 248–49. Under these circumstances, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is no genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted). If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the motion for summary judgment shall be granted. *Id.* at 322 ("Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

A party cannot create a genuine issue of material fact simply by making assertions in its legal papers. *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co.*, 690 F.2d 1235, 1238 (9th Cir. 1982). Rather, there must be specific, admissible evidence identifying the basis for the dispute. *See id.* "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may . . . consider the fact undisputed." FED. R. CIV. P. 56(e)(2). The Court need not "comb the record" looking for other evidence; it is only required to consider evidence set forth in the moving and opposing papers and the portions of the record cited therein. *Id.* 56(c)(3); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001). The Supreme Court has held that "[t]he mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]." *Liberty Lobby*, 477 U.S. at 252. To carry its ultimate burden of persuasion on the motion, the moving party must demonstrate that there is no genuine issue of material fact for trial. *Nissan Fire*, 210 F.3d at 1102; *Celotex Corp.*, 477 U.S. at 323.

## III. Findings of Fact[3]

The Court finds that the following material facts are established for trial under FED. R. CIV. P. 56(a) and FED. R. CIV. P. 56(g): Jarrahi owns a mobile home located at 23777 Mulholland Highway, Space 79, in Calabasas. Foremost SUF ¶ 1. Jarrahi obtained mobile home insurance from Foremost for the period of August 4, 2016, to August 4, 2017. *Id.* ¶ 2. The Policy contained the following exclusions:

> Section 1 – Exclusions
> We do not insure loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.
> * * *
> 11. Loss caused by:
> a. Wear and tear, marring, scratching,deterioration, . . .
> . . .
> c. Mold, mildew, or other fungi, . . .
> . . .
> . . .
> e. Settling, cracking, shrinkage, bulging or expansion, including resulting cracking of pavements, patios, foundations, walls, floors, roofs or ceiling.
> . . .
> 15. Loss caused by leakage from rain, sleet or snow or its resulting damage whether or not wind-driven.

*Id.* ¶ 29.[4] The Policy also contains a provision stating that an insured may not bring a legal action against the company more than one year after the loss occurs.[5] *Id.* ¶ 3.

On February 17, 2017, two trees on Jarrahi's property fell during a heavy rainstorm. *Id.* ¶ 4. Jarrahi reported the loss to Foremost on February 18, 2017. *Id.* ¶ 5. On February 27, 2017, Foremost sent claims adjuster Joshua Erickson to the mobile home to perform an inspection. *Id.* ¶ 6. On March 2, 2017, Erickson sent Jarrahi a check in the amount of $974.30 to cover repairs for damages caused

---

[3] All findings of fact are taken from Foremost's Statement of Uncontroverted Facts. *See generally* Foremost SUF.

[4] In the Foremost SUF, Foremost assigns the number 29 to two different facts. This refers to the first of those. *See infra* note 13. The Foremost SUF No. 29 contains some minor errors in its quotation of the Policy. The Court has quoted from the Policy itself. ECF 48-5, Ex. 1 at ECF page number 45, 47.

[5] Jarrahi purports to dispute this fact. However, he offers no evidence that challenges whether or not the insurance policy in question actually contains such provision. The information Jarrahi does offer is neither material nor gives rise to a genuine dispute of material fact.

by the fallen trees, minus the deductible.[6] *Id.* ¶ 7. *See* ECF. No. 48-5, Ex. 4. Foremost hired Kevin Cox of SPC Geotechnical, Inc., a professional engineer registered with the State of California, to determine the source of the water that leaked into the mobile home during the storm.[7] ECF. No. 48-1 ¶ 8. Cox performed his inspection on March 17, 2017, and provided Foremost with his opinion in a written report regarding the cause of the water intrusion. *Id.* ¶ 9. He opined that, on the date of the storm, wind-driven rain entered the unit laterally through openings in the side of the mobile home where the wood trim had warped due to long term moisture exposure. *Id.* The report also noted that there was evidence of long-term water intrusion through a vent pipe.[8] *Id.*

On March 2, 2018, about a year later, Jarrahi contacted Foremost and spoke to Scott Orange, a supervisor of Erickson, and informed Orange that he had new information about his claim.[9] *Id.* ¶ 10. That same day, Orange emailed Jarrahi, stating, "I will reopen your claim file and assign a local adjuster to meet with you for a re-inspection with your contractor present." Declaration of Bahram Jarrahi, ECF No. 57-1 ("Jarrahi Decl."), Ex. 7 ("March 2, 2018 Orange Email"). Orange assigned Gustavo Delgado to the claim, and Delgado performed a third inspection of the mobile home on March 12, 2018. Foremost SUF ¶ 11. After investigating the new information, on April 10, 2018,

---

[6] Foremost claims that Mr. Erickson sent Jarrahi a check that indeed covered repairs for damages caused by the fallen trees. Jarrahi disputes the amount of his claims. The dispute, however, is not material to the Court's decision. Nevertheless, the Court adjusts the language of Foremost SUF ¶ 7 to reflect the extent to which there is no genuine dispute over this fact.

[7] Foremost includes nearly identical statements in ¶ 8 of the Foremost SUF. However, ¶ 8 in its Issue 2 section contains the following introductory phrase: "At Plaintiff's request." Jarrahi disputes that he agreed to Foremost hiring a Geotechnical engineer, insisting that he only agreed to the hiring of a structural engineer to determine the source of the water leakage. ECF No. 57-5 ("Jarrahi SUF Opp'n") ¶ 8. The Court does not find this distinction material to its decision but has adjusted the language here to reflect the extent to which there is no genuine dispute over this fact. Jarrahi offers additional information to dispute the remainder of the statement; however, such information is neither material nor creates a genuine dispute of material fact.

[8] The language the Court supplies here combines the Foremost SUF "Issue 1" and "Issue 2" iterations of this fact. And though Jarrahi claims this fact to be in genuine dispute, Jarrahi SUF Opp'n ¶ 9, the evidence in the record does not appear to raise a genuine dispute as to whether evidence of long-term water intrusion through a vent pipe exists.

[9] Jarrahi purports to dispute this fact, contending that Orange agreed to reopen Jarrahi's claim and to send a structural engineer to determine the cause of his loss. Jarrahi SUF Opp'n ¶ 10. However, this additional information does not dispute the fact that Jarrahi contacted Foremost and informed Orange that he had new information about his claim. As a result, the Court overrules this objection. Moreover, the Court will include the additional information that Jarrahi has offered, as the evidence provided makes clear that such information cannot be disputed.

Delgado sent a letter to Jarrahi, advising that coverage was denied for the interior water damage.[10] *Id.* ¶ 12.

The April 10, 2018 letter also informed Jarrahi that the Policy contained a one-year limitation for filing suit, and that the claim was now closed.[11] *Id.* ¶ 13. Jarrahi immediately replied with a letter purportedly written by a contractor named Jeff Davani of Arina Builders. *Id.* ¶ 14. At Delgado's request, Cox reviewed, considered, and addressed Davani's assertions, but advised that he could find no factual basis for changing his conclusions.[12] *Id.* ¶ 15.

On June 6, 2018, one year and three months after the date of loss, Jarrahi sent Delgado a report by an engineer, Casey Hemmatyar. *Id.* ¶ 16. Delgado arranged immediately for a reinspection of the property with both engineers on July 3, 2018, although that appointment had to be rescheduled by Jarrahi. *Id.* ¶ 29.[13]

The fourth inspection of Jarrahi's home took place on July 13, 2018, with Jarrahi, Delgado, Cynthia Veal (Delgado's supervisor), Cox, and Hemmatyar. *Id.* ¶ 17.[14] Delgado found some further covered damage (displaced planks in the balcony caused by the fallen trees), readjusted the claim, and sent an additional check to Jarrahi. *Id.* ¶ 18. A separate letter was also sent to Jarrahi on July 20, 2018, advising that no coverage was available for the interior water damage and any cracking.[15] *Id.* ¶

---

[10] Despite the differing language, the Court views "Issue 1" and "Issue 2" of the fact assigned number 12 as having substantially the same meaning. Therefore, the Court adopts the language from the "Issue 1" section. Additionally, although Jarrahi claims this fact to be in genuine dispute, he offers no evidence in support of his contention. Jarrahi SUF Opp'n ¶ 12. Moreover, the additional information he offers in his objections to this fact are irrelevant.

[11] Although Jarrahi claims this fact to be in genuine dispute, he offers no evidence in support of his contention. Jarrahi SUF Opp'n ¶ 13. Moreover, the additional information he offers in his objections to this fact are irrelevant.

[12] Jarrahi purports to dispute this fact. Jarrahi SUF Opp'n ¶ 15. However, the information he offers is irrelevant and does not contradict the language Foremost offers.

[13] Like before, in the Foremost SUF, under the "Issue 2" section, Foremost assigns the number 29 to two different facts. This refers to the second of those. *See supra* note 3.

[14] For the majority of the sentences in this paragraph, there appears to be a discrepancy between the number Foremost assigned to each fact between the "Issue 1" and "Issue 2" sections of ECF. Foremost SUF. The Court uses the numbers assigned to the facts as they are written in the "Issue 1" section.

[15] Jarrahi purports to dispute this fact. Jarrahi SUF Opp'n ¶ 19. However, the information he offers is irrelevant and does not create a genuine dispute of material fact.

19. The July 20, 2018 letter again reminded Jarrahi that there was a one-year limitation on the time to bring a lawsuit.[16] *Id.* ¶ 20.

In September 2018, Jarrahi sent an addendum prepared by Hemmatyar to Foremost. Delgado forwarded the addendum to Cox for his review and response. *Id.* ¶ 21. On October 16, 2018, Delgado sent Cox's response to Jarrahi, along with a copy of his previous July 20, 2018 denial letter.[17] *Id.* ¶ 22.

On June 21, 2019, a letter with the heading "Demand for Policy Limit" was served on Foremost by an attorney, Matthew Huzaineh. *Id.* ¶ 23. The letter from Huzaineh acknowledged the one-year suit limitation as discussed in the July 20, 2018 letter and advised that Jarrahi intended to file suit on July 19, 2019.[18] *Id.* ¶ 24. On July 5, 2018, Delgado acknowledged receipt of Huzaineh's letter and clarified some erroneous information in that letter regarding a second claim that had been denied on July 20, 2017, which involved one or more plumbing leaks.[19] *Id.* ¶ 25. On July 22, 2019, Delgado sent a letter advising that he had reviewed and considered Huzaineh's demand and responded, "At this time, we respectfully decline to reopen this claim or consider payment of supplemental claims in relation to the loss."[20] *Id.* ¶ 26. The July 22, 2019 letter reminded Huzaineh of the one-year suit limitation in the policy.[21] *Id.* ¶ 27.

This lawsuit was filed on March 9, 2020.[22] *Id.* ¶ 28.

---

[16] Jarrahi purports to dispute this fact. Jarrahi SUF Opp'n ¶ 20. However, the information he offers is irrelevant and does not create a genuine dispute of material fact.

[17] Jarrahi purports to dispute this fact. Jarrahi SUF Opp'n ¶ 22. However, the information he offers is irrelevant and does not create a genuine dispute of material fact.

[18] Jarrahi purports to dispute this fact. Jarrahi SUF Opp'n ¶ 24. However, the information he offers is irrelevant and does not create a genuine dispute of material fact.

[19] Jarrahi purports to dispute this fact, contending that his deadline to file suit was one year from the date the claim was denied, which he argues was July 22, 2019. Jarrahi SUF Opp'n ¶ 25. However, as the Court discusses *infra* Section III.b.i.1, the Court finds that the date of denial was July 20, 2018.

[20] Jarrahi purports to dispute this fact. Jarrahi SUF Opp'n ¶ 26. However, the information he offers is irrelevant and does not create a genuine dispute of material fact.

[21] Jarrahi purports to dispute this fact. Jarrahi SUF Opp'n ¶ 27. However, the information he offers is irrelevant and does not create a genuine dispute of material fact.

[22] Jarrahi purports to dispute this fact, contending that the lawsuit was originally filed on December 20, 2019, but agrees that the instant lawsuit was filed on March 9, 2020. Jarrahi SUF Opp'n ¶ 28. Neither party disputes that the first action was filed on December 27, 2019, against non-insuring entities and dismissed with prejudice after a Motion to Dismiss was granted and Jarrahi did not file an amended complaint. Mot. at 1; *see also Jarrahi v. Farmers Ins. Co.*, 2:20-cv-00983-CJC(GJSx), ECF No. 9.

## IV. Discussion

Foremost contends that the Court should (1) grant summary judgment because the Policy's one-year suit provision bars the lawsuit entirely, or, alternatively, (2) grant partial summary judgment because there is no evidence of fraud, oppression, or malice to support punitive damages. In the case before us, Jarrahi has the ultimate burden of persuasion on each of his claims. In the pending Motion, Foremost has the initial burden of production and ultimate burden of persuasion.

### A. The Policy's one-year suit provision bars the lawsuit entirely.

Jarrahi argues that the Court should deny summary judgment because (1) the issues presented are inherently factual in nature so as to require denial of summary judgment, and (2) plaintiff's claims were equitably tolled until July 5, 2019, because Foremost kept Jarrahi's claim open until July 22, 2019, the date of the final denial letter. Opp'n at 20–24.

#### i. The fact that the issues presented are inherently factual in nature does not necessitate denial of summary judgment.

Jarrahi argues that because the issues presented are inherently factual in nature, the Court must deny summary judgment. Opp'n at 20. However, Jarrahi presents no additional explanation nor citations in support of his argument. As discussed previously, summary judgment should be granted if "the movant shows that there is *no genuine dispute as to any material fact* and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The fact that an issue is factual in nature does not automatically result in denial of summary judgment—rather, there must be a genuine dispute of material fact. As a result, the Court rejects Jarrahi's contention that summary judgment should be denied on this ground.

#### ii. Jarrahi's claims were only equitably tolled until July 20, 2018.

Jarrahi further contends that his claims were equitably tolled by: (1) Foremost reopening the claim; (2) equitable estoppel; (3) waiver; (4) late discovery of a latent defect; and (5) Foremost's failure to fully investigate the claim. Opp'n at 20–25.[23]

---

[23] The parties appear to agree that the contractual limitations period impacts the breach of contract and related tort claims equally.

1. *Foremost's reopening of the claim only equitably tolled Jarrahi's claims to July 20, 2018.*

Jarrahi contends that Foremost's decision to reopen and reconsider his claim equitably tolled his claims under the instant lawsuit until July 2019. This case centers on the Policy's one-year limitation on the filing of a lawsuit. As an initial matter, "[s]uch a policy provision requiring that an action be commenced within 12 months after the inception of the loss has been repeatedly upheld as a reasonable limitation which manifests no undue advantage and no unfairness as to the period of time." *Lawrence v. W. Mut. Ins. Co.*, 251 Cal. Rptr. 319, 322 (Ct. App. 1988). The California Supreme Court has deemed it "proper" to toll such one-year suit provisions "from the time an insured gives notice of the damage to his insurer, pursuant to applicable policy notice provisions, until coverage is denied." *Prudential-LMI Com. Ins. v. Superior Court*, 798 P.2d 1230, 1242 (Cal. 1990). However, equitable tolling does not apply to any reconsideration period. *Singh v. Allstate Ins. Co.*, 73 Cal. Rptr. 2d 546, 549–54 (Ct. App. 1998) (concluding that "the justifications for equitable tolling are absent, once the carrier has initially denied the claim," and therefore do not apply to reconsideration of a claim).

In the instant case, the one-year suit provision was equitably tolled from February 18, 2017—the day that Jarrahi reported his loss to Foremost—to March 2, 2017—the day that Foremost sent its claim outcome letter stating, "We've completed the adjustment of our loss and we are closing your claim." ECF No. 48-5 ("Foremost Exhibits"), Ex. 4 ("March 2, 2017 Claim Outcome Letter"), at 4-4. Foremost concedes that the one-year limitation was equitably tolled again when Foremost reopened Jarrahi's claim on March 2, 2018. *See* Reply at 2. However, the tolling of the limitation period ended on July 20, 2018, when Foremost again sent Jarrahi a letter partially denying coverage and stating, "While we welcome any additional information you may wish to provide, the claim will not be reopened unless we notify you of such in writing." Foremost Exhibits, Ex. 11 ("July 20, 2018 Claim Outcome Letter"), 11-2.

Jarrahi contends that his claim remained open (or at the very least was reopened) after July 20, 2018. In support of his contention, he points to language allegedly found in the July 20, 2018 Claim Outcome Letter, in which Foremost states, "We are also in the process of reviewing your

request from your letter and will follow-up with you once our review is completed." Declaration of Bahram Jarrahi, ECF No. 57-1 ("Jarrahi Decl."), Ex. 14. However, the Court finds it clear, based on a comparison of the two pages in this exhibit, that these pages come from different letters. As a result, the Court finds that Foremost did not represent that it was in the process of reviewing a request from Jarrahi in its July 20, 2018 Claim Outcome Letter. Rather, the letter explicitly stated that the claim was closed and would not be reopened unless written notice was provided. July 20, 2018 Claim Outcome Letter, 11-2.

Jarrahi further alleges that the following indicated that his claim still remained open until July 5, 2019: (1) an August 2, 2018 email from Delgado inviting him to provide new information related to the claim;; (2) several October 2018 emails from Delgado noting Foremost was reviewing reports that Jarrahi submitted in support of his claim and was preparing a response; (3) a July 5, 2019 letter from Delgado acknowledging receipt of Jarrahi's demand letter; and (4) a July 22, 2019 letter from Delgado advising that Foremost "respectfully decline[d] to reopen this claim or consider payment of supplemental claims in relation to the loss." Opp'n at 12–14. However, as discussed previously, equitable tolling does not apply to the reconsideration period, and, at best, these documents show only that Foremost was considering Jarrahi's request for reconsideration of its decision on his claim.[24] *See Singh*, 73 Cal. Rptr. 2d at 549–54. Indeed, as the California Court of Appeal in *Singh* reasoned,

> Once a claim has been made, the carrier has pursued its investigation, and the claim has been denied, the policies behind allowing equitable tolling have been fulfilled. The carrier's right to notice, and its ability to investigate and marshal any evidence it may need to defend, have been preserved. The insured has been provided at least some

[24] Jarrahi argues that the reopening and reconsideration of a claim tolls the revived one-year period to bring a claim, citing *Ashou v. Liberty Mut. Fire Ins. Co.*, 41 Cal. Rptr. 3d 819, 828 (Ct. App. 2006). However, *Ashou* is distinguishable because it involved considering whether equitable tolling specifically applies to the one-year period set forth in Code of Civil Procedure section 340.9. *See id.* at 828–30. The *Ashou* court further distinguished the facts of *Ashou* from *Singh*, noting that in *Ashou*, "between the insurer's initial denial of the claim and the insured's request for reconsideration, the Legislature found the insurance industry's response to [a large earthquake] to have been so inadequate that it was necessary to enact blanket legislation allowing suits on earthquake claims that would otherwise have been time-barred." *Id.* at 830. The Court finds that the situation presented in the instant case is more analogous to that in *Singh*, where "little had changed between the insurer's initial denial of the claim and the insured's request for reconsideration." *Id.*

> grounds, upon the denial, before being required to sue the carrier. Thereafter, however, the enforcement of the one-year limit works no injustice to either party.
>
> . . .
>
> The "reconsideration" period was not required to enable the insurer to receive notice of the claim and to investigate the claim so as to preserve its rights to defend, if it ultimately denied the claim. The "reconsideration" period did not come before plaintiffs had reason to know of their right to sue, or the expiration of the limitation in which to do so. Plaintiffs were aware of the right to sue, and of potential grounds, before any request for reconsideration. The justifications for equitable tolling are absent, once the carrier has initially denied the claim. The policies supporting the shortened limitation period are then fully applicable, and no reason for further tolling exists.
>
> . . .
>
> If insurance companies were saddled with the situation that whenever [they] reconsidered an earlier decision it would inaugurate a new limitations period, companies would be reluctant to offer policy holders the luxury of a second evaluation.

*Singh*, 73 Cal. Rptr. 2d at 550–51, 553 (quoting *Falk v. Fed. Ins. Admin.*, 1983 Ins. L. Rep. (CCH) 929, 930 (N.D. Cal. 1981)).

Here, Foremost's July 20, 2018 Claim Outcome Letter made clear that it would not reopen Jarrahi's claim unless Jarrahi was given written notice. Foremost never provided such notice. Even assuming that Foremost was considering granting reconsideration of its decision, equitable tolling would not apply to any such reconsideration period. As a result, the Court finds that Jarrahi's claim was only equitably tolled until July 20, 2018.

*2. Equitable estoppel does not apply.*

Jarrahi further argues that Foremost should be equitably estopped from asserting the statute of limitations defense to his claims. Opp'n at 24–25. Equitable estoppel arises when an insurance carrier "induces the policyholder to forbear from filing suit." *Singh*, 73 Cal. Rptr. 2d at 552. In order to establish equitable estoppel, the party seeking estoppel must ordinarily prove four elements:

> (1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had the right to believe that it was so intended; (3) the party asserting the estoppel must be ignorant of the true state of facts; and, (4) he must rely upon the conduct to his injury.

*Spray, Gould & Bowers v. Assoc. Int'l Ins. Co.*, 84 Cal. Rptr. 2d 552, 556 (Ct. App. 1999). Foremost contends that Jarrahi fails to prove the third element, that he was "ignorant of the true state of facts." Mot. at 5. In its July 20, 2018 Claim Outcome Letter, Foremost reminded Jarrahi of the one-year suit limitation and clearly stated, "We've completed the adjustment of your loss and we are closing your claim. While we welcome any additional information you may wish to provide, the claim will not be reopened unless we notify you of such in writing." July 20, 2018 Claim Outcome Letter. During the hearing on this motion, however, counsel for Foremost conceded that Foremost had previously reopened Jarrahi's claim several times without formally notifying Jarrahi of this in writing. As a result, despite Foremost's representation that "the claim will not be reopened unless we notify you of such in writing," Foremost's past practice of reopening claims without a formal writing could have led Jarrahi to reasonably believe that Foremost had reopened his claim again until July 5, 2019. The Court therefore concludes that a genuine dispute exists as to whether Jarrahi was "ignorant of the true state of facts"—namely, that his claims were only equitably tolled until July 20, 2018.

However, the Court finds that the second element for equitable estoppel cannot be met. There is no evidence whatsoever that Foremost intended for Jarrahi to miss his deadline to file suit or that it acted in a way such that Jarrahi "had the right to believe" that it so intended; rather, Foremost repeatedly reminded Jarrahi of the one-year suit limitation in its communications with him, including its July 20, 2018 Claim Outcome Letter. *See* Foremost Exhibits, Ex. 13 ("April 10, 2018 Claim Outcome Letter"); July 20, 2018 Claim Outcome Letter; Foremost Exhibits, Ex. 12 ("October 16, 2018 Claim Outcome Letter"). As a result, the Court finds that equitable estoppel does not apply.

*3. Foremost did not waive the one-year contractual limitation.*

"[A] waiver exists whenever an insurer intentionally relinquishes its right to rely on the limitations provision." *Prudential-LMI Com. Ins.*, 798 P.2d at 1240. An insurer who "expressly extends the one-year suit provision during its claim investigation . . . waives its right to raise a timeliness defense to the insured's action." *Id.* Here, there is no evidence suggesting that Foremost intentionally waived the Policy's one-year contractual limitation. Jarrahi neither cited to such evidence in his Opposition nor offered any during the hearing on this matter. As a result, the Court finds that Foremost did not waive the Policy's one-year contractual limitation.

*4. Jarrahi provides no evidence of latent defects to support tolling of the limitation period.*

Jarrahi contends that his late discovery of latent defects tolls the limitation period. The Supreme Court of California, in considering a similar one-year limitation for a cause of action involving fire insurance policies, defined the "inception of the loss" as "that point in time when appreciable damage occurs and is or should be known to the insured, such that a reasonable insured would be aware that his notification duty under the policy has been triggered." *Id.* at 1238. Jarrahi has provided no evidence of latent defects aside from conclusory statements that they exist. In fact, one of the expert reports he cites to in support of his contention clearly states: "The discovery of hidden or latent defects is beyond the scope of this reconnaissance report." ECF No. 57-2, Ex. 1 ("Azizisefat Report"). Although another expert states in a conclusory fashion, "There is latent hidden damage, that requires further investigation as the damage is in the structure is [sic] hidden from our sight," ECF No. 57-3 ¶ 5, "[t]he mere existence of a scintilla of evidence is insufficient to demonstrate a genuine issue of material fact." *Liberty Lobby*, 477 U.S. at 252. This conclusory statement does not constitute sufficient evidence on which a jury could reasonably find that a latent defect existed. *Id.* As a result, the Court finds that no late discovery of latent defects exists to support Jarrahi's contention that the limitation period was tolled.

*5. Failure to investigate the claim does not toll the contractual limitation period.*

Finally, Jarrahi contends, without citing to any legal support, that Foremost's failure to investigate the cause of the water intrusion tolls the one-year contractual limitation. As an initial matter, Foremost has submitted various pieces of evidence demonstrating that it investigated and reviewed Jarrahi's claims and multiple requests for reconsideration. April 10, 2018 Claim Outcome Letter; July 20, 2018 Claim Outcome Letter; October 16, 2018 Claim Outcome Letter. Nonetheless, an insurer's incomplete investigation is not grounds for tolling or reopening the limitation period. Tolling runs during the investigation period and ends once the insurance company issues a denial.

As a result, the Court concludes that Jarrahi's claims were only equitably tolled until July 20, 2018. As a result, Jarrahi had *at most* until July 20, 2019, to file his suit. Because Jarrahi waited until March 9, 2020, to file this action, however, the Policy's one-year limitation period bars this suit entirely.[25]

## V. Conclusion

In light of the foregoing reasons, the Court hereby ORDERS as follows:

1. The Motion for Summary Judgment is GRANTED in full; and
2. The Motion for Partial Summary Judgment is DENIED as MOOT.

IT IS SO ORDERED.

Dated: February 24, 2023

MAAME EWUSI-MENSAH FRIMPONG
United States District Judge

[25] Even if the Court were to consider Jarrahi's first lawsuit filed on December 20, 2019, to be the operative lawsuit for purposes of asserting his claims within the statutory limitation period, that lawsuit was also filed too late. Because the Court grants the Motion for Summary Judgment in full on the basis of the statutory limitation period, the Court need not consider Foremost's request for Partial Summary Judgment on the basis that there is no evidence of fraud, oppression, or malice to support punitive damages.